Mr. Justice James
delivered the opinion of the court.
The evidence in this case shows that Eagan, being the ■owner of five lots of land in the city of Washington, borrowed about one thousand dollars, and gave as security for the loan a deed of trust to C. C. Duncanson upon the property in question, and when the debt matured Duncanson advertised the property in default of payment. Shortly before the day appointed for the sale the plaintiff applied to Campbell, the defendant, to let him have the money to pay the debt, or to buy the property in for him and allow him to redeem it; that Campbell agreed that he would attend' the sale and purchase the property on behalf of the debtor, Eagan, and allow him to redeem it within a period fixed; that Campbell did attend the sale, and there said, in the presence of the trustee and of other persons, and of one of the witnesses who relates the story, that he was “ buying the property in for the old man.”
There is some conflict as to the value of the property, but it appears to be quite clear that it must have been worth something over four thousand dollars. Campbell himself .received rents at the rate of ten per cent, on more than five thousand dollars, and received it so soon after the purchase .as to show that it was worth at least four thousand dollars, and probably more, at the time of purchase. This value was not by reason of a sudden move in the market. He purchased the property, however, for $1,175.
Upon this statement of facts, viz., this antecedent parol .agreement and this conduct at the sale, which are charged to have been in fraud of the plaintiff, we are asked to declare this purchase to be a trust.
The first ground taken by plaintiff’s counsel is that we ¡should do so in the enforcement of the parol agreement. ¡Cases were cited to us from New York and elsewhere, showing that this has been done in some courts. We have *34 examined those cases. I have read them with care, and the question is one of great conflict. Some of the courts, it is true, and even so eminent a lawyer as Justice Story, have gone so far as to say that where a parol agreement, which would otherwise come within the Statute of Frauds, is made under circumstances which induce the other party to trust to it and act upon it, it becomes a fraud not to execute it; and that the Statute of Frauds was not intended to encourage fraud, but to prevent it, and, therefore, did not apply to such a case.
There are many cases to the contrary, however, and on a very full examination of them with great care, we are satisfied that the better rule is against enforcing a parol agreement which would virtually require us to set aside the Statute of Frauds. So, that if this case rested simply upon this antecedent parol agreement that the defendant, Campbell, would buy this property for the benefit of the plaintiff, we should decline to enforce it. But there is another reason which do,es not come within the principle of the Statute, and which we think applies to this case. When the transaction does not turn upon the mere agreement, but upon conduct which deceives the other party, which misleads him, and which it would be fraudulent to deny, the Statute of Frauds does not apply to that case; that is a question simply of fact. Now it has been held in a number of cases that where a purchaser goes to a sale and announces to the bystanders that he is buying for the benefit of the debtoi’, and thus discourages the bidding, as he naturally does, the effect of his conduct should, itself, operate to charge him as a trustee, especially when he purchases the property far below its value. Here he received forty-five dollars a month rent for this property, which would be over ten per cent, on five thousand dollars, and he bought it in for $1,175. It is said there was another bidder there, and Mr. Duncanson, the trustee, himself, said that the property brought a fair price - But his opinion is not to be put against the fact that the property was a good renting property at five thousand dollars.
We are of opinion, therefore, that the purchaser got this *35 property far below its value by reason of holding himself out at the sale as a purchaser for the benefit of the debtor. With this knowledge no other person would compete for the purchase, as he would know that a purchaser for the debtor would be under no obligation to be subject to his bid. He might bid this property off at six thousand dollars, but it would be immaterial to him because he would not have to pay the money out; all that he would have to do would be to pay over the amount of the debt to the trustee who would! have nothing to do with it after he had received the amount, due, and then the property would return to the original debtor and the purchaser. It is for that reason that such an. announcement at a sale discourages bidding, and it would be an inducement for a purchaser to hold himself out as bidding-for the debtor, thus running the property down below its value, and then to disappoint the owner of the equity of redemption. Moreover, it may happen — though there is no proof to that effect in this case — that the owner of the property has ceased from making efforts to save it, if he understands what is being done at the sale, relying upon his agreement with the purchaser.
I have stated that the cases do not seem to establish the doctrine that the antecedent agreement may be enforced, but they do allow this, that proof of the antecedent agreement may be admitted as going to show one of the elements of the fraudulent device of the defendant in announcing himself at the sale as a purchaser for the benefit of the debtor.
With these views, therefore, we affirm the decree below, and send the case back that an account may be taken that shall cover the receipt of rents.